UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE L. HEARNS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CISNERO, et al.,<br><br>　　　　　Defendants. | Case No.: 1:22-cv-1033-JLT-CDB (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM**<br><br>(Doc. 29)<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff Clarence L. Hearns is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.　　PROCEDURAL BACKGROUND**

Plaintiff initiated this action with the filing of his original complaint on August 16, 2022. (Doc. 1.) That same date, Plaintiff filed a motion for injunctive relief. (Doc. 3.)

On October 13, 2022, the Court issued Findings and Recommendations to Deny Motion for Preliminary Injunction and Temporary Restraining Order. (Doc. 13.) Plaintiff filed his objections on November 3, 2022. (Doc. 16.) On November 8, 2022, District Judge Jennifer L. Thurston issued an Order adopting the findings in full, denying Plaintiff's motion for a preliminary injunction and temporary restraining order. (Doc. 17.)

//

On November 29, 2022, Plaintiff moved for reconsideration. (Doc. 18.) Judge Thurston issued an Order Denying Reconsideration on December 2, 2022. (Doc. 19.)

On December 14, 2022, Plaintiff filed a document titled "Motion for Appelate [sic] Relief in the Form of Injunction Pursuant to FRAP Rule 8." (Doc. 20.) Thereafter, an appeal was processed to the Ninth Circuit Court of Appeals. (*See* Docs. 22 & 23.)

On February 23, 2023, the Ninth Circuit issued its Memorandum, affirming the denial of Plaintiff's motion for injunctive relief. (Doc. 25.) The appellate court subsequently denied Plaintiff's petition for rehearing. (Doc. 27.)

On April 25, 2023, this Court issued its First Screening Order. (Doc. 26.) The Court held Plaintiff's complaint failed to state a claim upon which relief could be granted. (Doc. 26 at 4-9.) Plaintiff was granted leave to amend his complaint to cure the deficiencies identified in the screening order. (*Id*. at 9-10.)

On May 19, 2023, Plaintiff filed a first amended complaint. (Doc. 29.)

## II.  SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.  PLEADING REQUIREMENTS

### A.  Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal

quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the

1  involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v.*
2  *Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

3  **IV.    DISCUSSION**

4  **A.   Plaintiff's First Amended Complaint**

5  Plaintiff names Kathleen Allison, Secretary of the California Department of Corrections
6  and Rehabilitation, as well as Warden Teresa Cisneros, Associate Warden R. Morales and
7  Captain C. Frazier at the Substance Abuse Treatment Facility (SATF), as defendants. (Doc. 29 at
8  1, 3.) Plaintiff alleges a single claim for relief, asserting a violation of due process for deprivation
9  of property. (*Id*. at 3.) Plaintiff asks the action to be set "for hearing to determine/certify class
10 action status," to hold a "preliminary hearing on Injunction [sic] Relief," order Defendants
11 reimburse Plaintiff $1,000, award attorneys fees and court fees, return Plaintiff's JPay Tablet,
12 declare the rights of the parties, award punitive damages in the sum of $3,000 and to appoint
13 counsel to "represent class action members."[1] (*Id*. at 7.)

14 **B.   Plaintiff's Claim**

15 Plaintiff asserts a violation of his due process rights, quoting from the Fourteenth
16 Amendment. (*See* Doc. 29 at 3.)

17 *Factual Allegations*

18 Plaintiff contends that on or about April 13, 2016 and March 21, 2019, Defendant Allison
19 issued a directive or memoranda stating, in part: "'All inmates currently possessing non enhanced
20 security hot pots will be allowed to retain them until no longer functional'" and "'The previously
21 offered incentives … tablets, MP3 Players … will be taken out through attrition … This change
22 will have no impact on the … JPay emails slated for the end of 2017.'" (Doc. 29 at 3.) Plaintiff
23 asserts these directives relating to inmate owned appliances allowed for the retention of those
24 appliances and were "in keeping with standard CDCR policy." (*Id*. at 3-4.)

25 Next, Plaintiff asserts in March 2022, Defendant Allison instructed Defendant Cisneros to
26 announce the end of the JPay pilot program "on June 30, 2022 and the introduction of the

---

[1] Injunctive relief was denied on November 8, 2022. (Doc. 17.) The Court denied reconsideration of that order on November 29, 2022. (Doc. 19.) On Plaintiff's appeal, the Court of Appeals affirmed this Court's denial of Plaintiff's request for injunctive relief. (*See* Doc. 25.)

GTL/VPT tablets into the general population at SATF state prison, start on July 1, 2022." (Doc. 29 at 4.) Plaintiff contends Allison told Cisneros "that CDCR did not want the JPay Tablets to remain in the prisons because their presence and use would take away revenue from the state-owned tablets." (*Id*.) Plaintiff maintains that "is why the wifi and most importantly the kiosk had to be cut off." (*Id*.) Plaintiff states on efforts were undertaken to collect MP3 players or other non-network capable tablets "(i.e. U-Tab or Hytecker)." (*Id*.)

Plaintiff contends that on April 24, 2022, he filed an inmate appeal seeking a pre-deprivation hearing concerning the directive that inmates could not possess JPay Tablets. (Doc. 29 at 5.) It was denied at all levels. (*Id*.) Next, Plaintiff asserts Allison authorized "a CDCR web posting stat[ing] 'Incarcerated people are allowed to have two tablets in their possession during this transition period. Details about how those tablets (i.e. JPay) will be unlocked and sent to a recipient of the user's choice will be shared in the coming weeks.'" (*Id*.) Plaintiff asserts that at the time of that post, Defendants Allison, Cisneros, Morales and Frazier "knew that the Secretary and her entire staffing in Sacramento had no plans to authorization for JPay Inc., to unlock tablets or for CDCR to Pay for unlocking or postage to send tablets home or anywhere else," citing to a July 22, 2022 memorandum by "M. E. Spearman: 'If the incarcerated person owns the JPay Tablet, the tablet shall be disposed of in accordance with California Code of Regulations, Title 15, section 3191 (c) ….'" (*Id*.)

Next, Plaintiff states that after numerous phone and email inquiries by "SATF facility Captains" to Defendant Cisneros "regarding the scheduled turning off of the JPay kiosks," Cisneros instructed Frazier "to tell A facility Inmate Advisory Committee members that there had been no memoranda or communication directions from CDCR" concerning the "transfer of content from the JPay tablets to the GTL/VPT tablets." (Doc. 29 at 5.) Plaintiff contends the statement "was known from the [inception] not to be possible." (*Id*.) Plaintiff asserts Allison's "authorization of the 12 million dollar creation of the joint GTL / CDCR tablets as incompat[ible] with JPay tablet, i.e. GTL tablets access server for content. And JPay tablets contain memory within the tablets of 32 gb." (*Id*. at 5-6.)

//

On or about July 29, 2022, Plaintiff served a copy of his "Request for TRO/Preliminary Injunction, via SATF institutional mail service" on Defendant Cisneros. (Doc. 29 at 6.) Plaintiff alleges that immediately thereafter Cisneros contacted "Allison's office and R. Morales directly." (*Id*.) Plaintiff contends Cisneros "was seeking guidance and instruction on how to deal with possible court litigation, on the tablets." (*Id*.) Plaintiff asserts Allison's office instructed Cisneros and Morales "along with all necessary SATF employees to destroy the inmates paper copies of the registered personal property. Then have digitally all inmate re-register their personal property. And do not register JPay Tablets or the Keyboards use to access them without use of the Kiosks." (*Id*.)

Next, Plaintiff contends that in August 2022, after "purging of the paper records of inmate property," Frazier announced all inmates had to re-register their personal property, excluding JPay Tablets and keyboards. (Doc. 29 at 6.) On or about October 13, 2022, Plaintiff asserts A facility staff "at the direction of" Defendants Allison, Cisneros, Morales and Frazier confiscated "as unregistered 'CONTRABAND' appliance per Title 15 § 3191, JPay Tablet." (*Id*.) Plaintiff asserts those actions were in "violation of Vance v. Barrett, 345 F. 3d 1083, 1090 (9th Cir. 2003)." (*Id*.)

### *Applicable Legal Standards*

The Due Process Clause protects prisoners from being deprived of property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, *see Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984) (citing *Logan v. Zimmerman Brush Co*., 455 U.S. 422 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533.

The Due Process Clause is violated only when the agency "prescribes and enforces forfeitures of property without underlying statutory authority and competent procedural

protections." *Nevada Dept. of Corrections v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing *Vance v. Barrett*, 345 F.3d 1083, 1090 (9th Cir. 2003)) (internal quotations omitted).

An authorized, intentional deprivation of property is carried out pursuant to established state procedures, regulations, or statutes. *Logan*, 455 U.S. at 436; *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987). It is permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The substantive component of the Fourteenth Amendment Due Process Clause "forbids the government from depriving a person of life, liberty, or property in such a way that ... interferes with rights implicit in the concept of ordered liberty" — regardless of what type of process is first given. *Engquist v. Oregon Dept. of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007). State regulations give rise to a liberty interest protected by the Due Process Clause of the federal Constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Laws do not offend the Due Process Clause when they are rationally related to a legitimate government interest. *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997).

### *Analysis of Plaintiff's Claim*

Here, Plaintiff is asserting a substantive due process claim based upon an authorized deprivation.

As noted above, prisoners generally have a protected interest in their personal property. *Hansen*, 502 F2d at 730. California law provides for regulation of allowable personal property of prison inmates. Title 15 of the California Code of Regulations section 3190 provides, in relevant part:

> (a) Inmates shall be permitted to possess in their living quarters/living area, state-issued property items, and authorized personal/religious property items based upon privileges in section 3044 and/or assigned security level and/or institution mission, and subject to disciplinary provisions in sections 3314 and 3315.

> (b) Specific items of personal property shall be established by a consensus of individual facilities within the Division of Adult Institutions. An Authorized Personal Property Schedule, identifying a list of allowable property, not including religious property, shall be developed and updated no more frequently than twice yearly. Local facility exemptions to the property lists shall also be identified. All changes to the Authorized Personal Property Schedule shall be adopted in accordance with the rulemaking requirements of the Administrative Procedure Act (Government Code sections 11340 through 11350.3) and, if applicable, Penal Code section 5058.3.
>
> The following five property lists are incorporated by reference: …
>
> (2) Authorized Personal Property Schedule – General Population Levels I, II, and III, Male Inmates (Rev. 01/23/23). This personal property schedule applies to all facilities with operate Levels I, II, III Male Inmate Housing.

Subsection (*l*)(8) of that section states: "Network capable tablets. Inmates expressly authorized by the Secretary to possess network capable tablets are listed in the Authorized Personal Property Schedules, pursuant to subsections 3190(b)(1)-(5)."

This authorized, intentional deprivation of the JPay tablet occurred pursuant to state policies and regulations. *Logan*, 455 U.S. at 436. Even assuming the truth of Plaintiff's assertion that the deprivation occurred because the continued use of JPay tablets, versus GTL/VPT tablets, "would take away revenue from the state-owned tablets" within the prison system, concerns regarding revenue earned or retained by the state are rationally related to a legitimate government interest. *See, e.g.*, *Holloway v. Magness*, 666 F.3d 1076, 1080-81 (8th Cir. 2012) (prison's exclusive contract with telephone service provider, under which prison received 45% of provider's gross revenues on inmate calls, did not impermissibly infringe inmate's constitutional right where, among other things, inmates retained alternative means of communicating with non-inmates). Here too, Plaintiff retains alternative means of tablet possession and use by way of the GTL tablet.

Significantly too, "there is a difference between the right to own property and the right to possess property while in prison." *Velasquez v. Ahlin*, No. 1:18-cv-00053-LJO-SAB (PC), 2018 WL 1959541, at *8 (E.D. Cal. Apr. 25, 2018) (quoting *Searcy v. Simmons*, 299 F.3d 120, 1229 (10th Cir. 2002)). Here, the Court finds Plaintiff does not have a protected property interest in

9

possessing his JPay tablet or accessories while incarcerated:

> Plaintiff cannot allege a fundamental right in possession of a particular type of electronic device. Plaintiff does not have a fundamental right to possess a SD card for a music player. Deprivation of this type of inmate property is not a fundamental right. Regulations enacted to protect institutional security from potential breaches that electronic communications devices pose within the institutions are permissible regulations by demanding substantive due process standards.

*Atencio v. Allison*, No. 1:21-cv-00191-BAM (PC), 2021 WL 2982917, at *4 (E.D. Cal. July 15, 2021); *Rhoden v. Dep't of State Hospitals*, No. 1:18-cv-00101-NONE-SAB (PC), 2020 WL 5737019, at *2, 11 (E.D. Cal. Mar. 20, 2020) (finding civil detainee failed to state a due process claim because he had not protected liberty interest to own "electronic and storage devices (personal laptop computer, tablet, other electrical devices …)"); *Osaki v. San Bernardino Cnty. Sheriff Dep't*, 2023 WL 4291851, at *8 (C.D. Cal. May 26, 2023) (finding that inmate did not have a protected right to possess phones, tablets, and keys allegedly seized improperly while incarcerated); *see also Cerniglia v. Price*, No. 17-cv-00753-AWI-JLT (PC), 2017 WL 4865452, at *3–4 (E.D. Cal. Oct. 27, 2017) ("No court has found that prisoners have a constitutional right to possess personal computers or items that are similar to personal computers which are capable of accessing the internet in their cells"). *See also Diaz v. Madden*, No. 3:20-cv-02147-GPC-BGS, 2021 WL 673567, at *5 (S.D. Cal. Feb. 22, 2021) ("to the extent he claims Defendants deprived him of a liberty interest to either access a computer or some other unspecified decryption device, Plaintiff also fails to state a plausible claim for relief under the Fourteenth Amendment"); *Burrell v. DOCCS*, No. 9:22-CV-0702 (DNH/ATB), 2023 WL 1861566, at *9 (N.D.N.Y. Feb. 9, 2023) ("inmates do not have a protected liberty interest in tablet use").

To the extent Plaintiff alleges that prison rules were improperly implemented, prison officials' violation of their own policies does not itself raise a federally cognizable claim. *See Peralta v. Dillard*, 744 F.3d 1076, 1087 (9th Cir. 2014) (failure to follow procedures is not, of itself, enough to establish a violation of plaintiff's constitutional rights); *see also Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (a prisoner may not "transform a state-law issue into a federal one merely by asserting a violation of due process. We accept a state court's interpretation

of state law, and alleged errors in the application of state law are not cognizable") (internal citation omitted).

Because Plaintiff does not have a liberty interest in possessing a JPay tablet and its contents, Plaintiff is unable to state a cognizable due process claim. Therefore, granting leave to amend would be futile. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile").

### V. CONCLUSION AND RECOMMENDATIONS

Based on the above, **IT IS HEREBY RECOMMENDED** that this action be dismissed, without leave to amend, based on Plaintiff's failure to state a claim upon which relief may be granted.

These Findings and Recommendations will be submitted to the district judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **August 18, 2023**

UNITED STATES MAGISTRATE JUDGE

11